## Case No. 9,354.

### MAYO v. BLAIR et al.

### [1 Hayw. & H. 96.] [1]

Circuit Court, District of Columbia. Aug. 13, 1842.

LIBEL—PLEADING—NOT GUILTY—JUSTIFICATION—EVIDENCE—DAMAGES—MITIGATION THEREOF.

1. Where a declaration charges a libel, to which the defendants pleaded not guilty, it is incompetent for the defendants to prove the truth of said libel even in mitigation of damages.

2. The defendants having pleaded justification, averring the truth of the libel, they must prove the truth of the alleged libel with the inuendoes as laid in the declaration.

3. It is not competent for the defendants in sustaining the issue on their part on the pleas of justification to give any evidence in mitigation of damages, if the jury shall believe from the evidence that the plea of justification was not made out by proot.

4. In a suit for libel the amount of damages is a matter for the determination of the jury.

[This was an action for libel by Robert Mayo against Francis P. Blair and John C. Rives.]

Richard S. Coxe and Brent & Brent, for plaintiff.

James Hoban and F. S. Key, for defendants.

The declaration is as follows: That whereas, heretofore, to wit, on the 7th of July, 1838, at the county aforesaid, the Hon. John Quincy Adams had stated in the house of representatives of the United States, that he had seen an original letter in the handwriting of Gen. Andrew Jackson, president of the United States, dated the 10th of December, 1830, and addressed to a certain Wm. Fulton, then, to wit, at the date of said letter, secretary of the territory of Arkansas, which letter was then stated by said Adams to be in the city of Washington, where it could be seen by any gentleman who had curiosity to examine it; and whereas the said Adams, at the same time and place, had read to the said house of representatives a paper purporting to be a true copy of said original letter, whereby it was represented that the said Jackson had written a letter marked "strictly confidential" to the said Fulton, advising him in substance that information had been received by said Jackson that an extensive expedition was organized in the United States

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton, Esq.]

with the view to the establishment of an independent government in the province of Texas, and that General Houston was to be at the head of it, and requesting the said Fulton to keep him, the said Jackson, advised of any movements which might serve to justify the suspicions entertained; and whereas the defendants afterwards, to wit, on the 2nd of July, 1838, had notice that the said letter had been shown to said Adams by the plaintiff, and was then and there in the plaintiff's possession by delivery from the said Jackson; but the said defendants, well knowing the premises, but greatly envying the happy state and condition of the plaintiff, and contriving and wickedly and maliciously intending to injure the plaintiff in his good name, fame and credit, and to bring him into public scandal, infamy and disgrace, with and amongst all his neighbors and other good and worthy citizens, and to cause it to be suspected that he, the plaintiff, had been and was guilty of improperly and dishonorably acquiring said letter, and to vex, impoverish, harass and wholly ruin the plaintiff, heretofore, to wit, on the 21st of July, 1838, in a certain newspaper called "The Globe," of which the defendants were then and there publishers and proprietors, falsely and maliciously did print and publish, and caused and procured to be printed and published, of and concerning the said plaintiff, and of and concerning the manner in which he became possessed of the said original letter, and of and concerning the said Adams in connection therewith, a certain false, scandalous, malicious and defamatory libel, containing, among other things, the false, scandalous, malicious, defamatory and libellous matter following, of and concerning the said plaintiff, and of and concerning the manner in which he became possessed of the said original letter, and of and concerning the said Adams in connection therewith, that is to say: "This letter was adduced and read as proof that General Jackson was apprised of Houston's design on Texas, and the duplicity imputed in regard to it was the inference of Mr. Adams that it was not sent because the original was not found on the files of the state department. That original Mr. Adams admitted, however, he had examined, but he does not explain how he came possessed of that strictly confidential state paper, which was evidently out of place in his hands. The natural inference is, that it must have been purloined" (meaning that the plaintiff, who had communicated said original letter to said Adams, had purloined and stolen said letter), "a very sufficient reason why it was not to be found in its proper place."

2nd count: That the defendants in a certain, &c., printed, &c., that is to say: "Mr. Adams" (meaning the Hon. John Quincy Adams who had read the paper purporting to be a copy of said described original letter, and to whom the plaintiff had shown said original letter), "it will be recollected, upon being called on by the chairman of the committee on foreign affairs to state how he came into possession of that letter" (meaning how and in whose hands the said Adams had seen the said original letter which he had stated he had seen), "refused to do so unless he should be required by an order of the house. Subsequent disclosures in another quarter have afforded the information which he" (meaning the said Adams) "refused to give, and have revealed to the public the means by which this letter was obtained." (Meaning that the rumor and report charging the plaintiff with improperly obtaining the possession of said original letter had afforded the information which the said Adams had refused to give, and had revealed to the public the means by which the plaintiff had obtained said original letter.) "We leave it to an honest and high-minded community to pass sentence upon the transaction." (Meaning that the transaction, to wit, the mode of obtaining the said original letter by the plaintiff, had been such that an honest and high-minded community would condemn it.) "It is not a subject for reasoning. The instinctive impulses of every honest man will at once condemn the use of such means in assailing an adversary. No one possessing the least magnanimity or delicacy of feeling would have read to the house of representatives a letter which he had reason to believe was obtained without the knowledge of the party to whom it belonged, and which was marked 'Private and confidential.'" (Meaning that said Adams in reading said letter had exhibited a want of magnanimity and delicacy of feeling, and that the plaintiff had improperly obtained said letter without the knowledge of the party to whom it belonged.)

3rd count. That the defendants in a certain, &c., printed, &c., that is to say: "The evidence in possession of General Jackson on the other hand, of a contemplated expedition against Texas, consisted of a single letter from an individual" (meaning the plaintiff) "of whom we will say no more than that any person of common sense, considering the circumstances under which it was written, the person writing it" (meaning the plaintiff), "and the internal evidence afforded by the letter itself, would have attached no more weight to the statement it contained than did the president. There was in this case no 'voluminous mass' of testimony to act upon, but a solitary letter" (meaning the said letter of the plaintiff) "unsupported by concurrent information or by the particular credibility of the relator." (Meaning that the said letter of the said plaintiff was unsupported by the particular credibility of the plaintiff.)

By reason of all which premises the plaintiff is the worse and hath damages to the value of $30,000.

The following are the pleas of the defendants: 1st. Not guilty in the manner and form, &c., of the matter alleged against them

in the declaration. 2d. And for a further plea as to the words of the alleged libel as charged in the second count, defendants admit the publication thereof, and justify publishing the same because defendants say that it is true. 3d. And for a further plea they admit the publication of the words as stated in the third count and justify the publishing the same because they say it is true.

The plaintiff, through his counsel, offered evidence of the publication charged in the declaration, and the evidence of Mr. Adams as follows, taken de bene esse: "Dr. Mayo did exhibit to him certain documents, and stated to him the manner in which he became possessed of them. They formed a part of many letters which Dr. Mayo had written to President Jackson from the commencement or a very early period of his administration down to nearly its close; that a bundle of those letters, shortly before the expiration of the presidency of General Jackson, had been returned to him. Dr. Mayo, by order of President Jackson. That the letter from President Jackson to Mr. Fulton was included in the bundle, and that he never had seen it before the receipt of the bundle. That Dr. Mayo, in communicating this paper to him (Mr. Adams), did make some observations to him expressive of his own sense of duty to make these documents public; that he did subsequently receive a written communication from Dr. Mayo conveying to him copies of the papers referred to; and that Dr. Mayo never left with him any of the original documents or letters referred to, but only exhibited them to him for perusal."

The defendants, through their counsel, produced a pamphlet admitted to have been published by the plaintiff, and offered to read certain passages therefrom for the purpose of proving that plaintiff represented and set forth a certain affidavit of General Jackson in relation to the manner in which plaintiff had obtained possession of the letter mentioned in Mr. Adams' evidence, and that the plaintiff therein denied the truth of said affidavit, and stated the manner in which he did get possession of said letter. And the defendant's counsel, in offering to read the part of said publication containing said affidavit of said Jackson, stated they did not offer to read the same as a deposition or affidavit admissible as evidence of the facts it states, but only as evidence of what the plaintiff had stated, that General Jackson had sworn to, and of what the plaintiff said in answer to or in relation to what General Jackson had sworn to.

But THE COURT refused to allow the same to be read, which refusal was excepted to by the counsel of the defendants.

The following prayers were granted by THE COURT:

1st. The declaration in this case charging the libel as laid to consist in charging the plaintiff with purloining a certain paper,, to which the defendants have pleaded not

guilty, it is not competent for the defendants to prove the truth of said libel in this action even in mitigation of damages. But the defendants may prove the truth of any other improper way of getting possession of such paper by the plaintiff, or any improper use of such paper by plaintiff, known to the defendants, at the time of the publication.

2nd. The defendants having pleaded justification to the second and third counts of the declaration averring the truth of the libel, it is essential for the defendants to prove to the satisfaction of the jury the truth of the alleged libel, with the inuendoes as laid in the declaration.

3rd. It is not competent for defendants, in sustaining the issue on their part on the pleas of justification, to give any evidence in mitigation of damages, if the jury shall believe from the evidence that the plea of justification was not made out by proof.

4th. It is not competent for the defendants to give evidence under the second and third pleas, if the jury shall believe the pleas averring the truth of said alleged libel not to be sustained, nor any evidence to disprove the malice which the law infers from the original publication of the alleged libel and from the retention of the same in the pleas of justification.

5th. That the only part of the declaration to which it is competent to defendants to give any evidence to disprove malice or in mitigation of damages, is the first count, and the jury are not to regard any facts as amounting to a negation of malice or as mitigating the damages, unless the jury shall be satisfied from said evidence that said facts actually existed and were known to defendants before and at the time of the alleged publication.

6th. If the jury shall believe from the said evidence that the defendants actually published the libel as laid in the first count of the declaration and that facts therein averred and the inuendoes in said first count mentioned are true, then the jury must find for the plaintiff upon the issue in that count, but the amount of damages is a matter for the judgment of the jury.

But the jury, before they can find a verdict for the plaintiff on said first count, with any damages, must be satisfied from the evidence that it was known to the defendants at the time of said publication that the plaintiff was the person who had delivered the letter to Mr. Adams. And if they find that the defendants had that knowledge at that time, they must be further satisfied by the evidence that the defendants intended to describe and point out the plaintiff in said publication as the person charged thereby.

The following prayer was refused by THE COURT:

Nor is it competent under pleas of justification for the defendants to give in evidence the use made by the plaintiff of the said letter after it came to his hands as evidence

of the truth of the libel laid in the second and third counts.

Verdict for the defendants.

The plaintiff, through his counsel, Coxe and Bradley, moved for a new trial—Because the court mistook the law. Because illegal testimony was admitted on the part of the defendants. Because the verdict was against law and against the evidence; and because of newly discovered evidence materially affecting the merits of the case.

The motion was overruled by THE COURT. THRUSTON, Circuit Judge, absent.